IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Carrie Waters, | Case No. 3:10 CV 587 |
|         Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
|         Defendant. | |

## INTRODUCTION

Plaintiff Carrie Waters timely filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental social security income ("SSI") benefits. This Court has jurisdiction under 42 U.S.C. § 405(g).

This case was referred to Magistrate Judge Vecchiarelli for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(2). After briefing on the merits by both parties, the Magistrate recommended that this Court affirm the final decision of the Commissioner to deny Plaintiff's claims (Doc. No. 18).

The matter is now before this Court on Objections to the R&R filed by Plaintiff (Doc. No. 19). Defendant filed a Response (Doc. No. 20) and Plaintiff filed a Reply (Doc. No. 23). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has reviewed the determination of the Magistrate *de novo*. For the reasons set forth below, this Court adopts the Magistrate's recommendation to affirm the Commissioner's decision.

**BACKGROUND**

The R&R accurately recites the relevant factual and procedural background from the record, and this Court adopts them in their entirety (Doc. No. 18, at 2–10).  Briefly, Plaintiff was thirty-one years old at the onset of her alleged disability.  Her most recent employment was as an outside sales manager, and earlier work included waitress, customer service representative, customer service manager, photographer, and office helper.

Plaintiff sustained a back injury back in May 2001 when she fell from a second-story window (Doc. No. 12-13, at 13).  The fall resulted in a burst fracture of Plaintiff's L1 vertebra, which required a surgical fusion using bone grafts and rods (Doc. No. 12-13, at 7, 9–10).  Plaintiff eventually returned to work (Doc. No. 12-3, at 12).

Plaintiff subsequently suffered several more injuries to her back.  In February 2003, Plaintiff fell down a flight of stairs and broke the rods in her back (Doc. No. 12-3, at 10).  The rods were surgically removed, but the distal screws, too deep to remove without risk to the nerve root, were left in place (Doc. No. 12-14, at 23).  In October 2004, Plaintiff was in a car accident where she was rear-ended at approximately fifty miles per hour, resulting in significant back pain for Plaintiff (Doc. No. 12-11, at 5).  Two years later, Plaintiff was in another car accident and suffered a neck strain, wrist contusion and mid back pain (Doc. No. 12-10, at 18–19).

Plaintiff applied for DIB and SSI benefits on April 20, 2007, alleging disability since April 16, 2007, due to spinal cord damage and fractured vertebrae (Doc. No. 12-8, at 3).  In July 2009, after an administrative hearing and review of the medical record, Administrative Law Judge ("ALJ") Burlison determined that Plaintiff was not disabled (Doc. No. 12-2, at 19).  The Appeals Council

denied review and the ALJ's Decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed the present action.

## STANDARD OF REVIEW

In reviewing the denial of DIB and SSI benefits, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746.

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" under Social Security is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (definition used in DIB context); *see also* 20 C.F.R. § 416.905(a) (definition used in SSI context). In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. . . ." *Walters*, 127 F.3d at 529 (citing 42 U.S.C. § 423(d)(2)).

The Commissioner's regulations governing the five-step evaluation for DIB and SSI benefits are found at 20 C.F.R. §§ 404.1520 and 416.920, respectively:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe", which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. Determine the claimants residual function capacity and whether claimant can perform past relevant work.

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five, in determining whether

4

the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The court considers claimant's residual functional capacity, age, education, and past work experience to determine if claimant could perform other work. *Walters*, 127 F.3d at 529. Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

The ALJ denied Plaintiff's request for benefits under step five, finding that while Plaintiff is unable to perform any past relevant work, considering her age of thirty-one at the alleged onset date, some college education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Doc. No. 12-2, at 17–18). The R&R agreed. Plaintiff now raises two objections to the R&R: (1) that the Commissioner failed to meet his burden at step five of the sequential evaluation; and (2) Plaintiff is more limited than found by the ALJ.

### The Vocational Expert's Testimony

The Vocational Expert ("VE") found that Plaintiff could perform semi-skilled jobs. Upon considering the record, the ALJ found Plaintiff had a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that Plaintiff requires a sit/stand at-will option for comfort (Doc. No. 12-2, at 14). The ALJ further found that Plaintiff is unable to perform any past relevant work (Doc. No. 12-2, at 17), and then determined that Plaintiff could make a successful adjustment to other work based upon the Medical-Vocational Guidelines. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

Those Guidelines -- a grid -- consider the characteristics of the claimant (age, education, transferability of skills) to direct a conclusion of disability. Where the claimant suffers a limitation not accounted for by the grid, however, then the Commissioner must use other evidence to determine disability. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990)).

The ALJ found that Plaintiff suffered from limitations beyond those accounted for by the grid, in that she requires a sit/stand at-will option, and properly used the grid as a framework while looking to other evidence. An ALJ is "entitled to rely on the testimony of a vocational expert in reaching his decision." *Range v. Soc. Sec. Admin.*, 95 F. App'x 755 (6th Cir. 2004) (citing *Wright*, 321 F.3d at 616). Here, the ALJ relied on the testimony of the VE in determining that there were a significant number of jobs in the national economy that Plaintiff could perform.

The ALJ posed the following hypothetical to the VE (Doc. No. 12-3, at 26–27):

> We have a hypothetical claimant, a younger individual, completed high school plus some years of college approaching an associate's degree, limited as follows. Limited to a sedentary level of work, which would allow for a sit/stand option for comfort, and that is the only limitation.

The VE testified that such a hypothetical person could not perform Plaintiff's past relevant work, and would have no transferable skills, but that such a person would be able to make adjustments to other work (Doc. No. 12-3, at 27).

The ALJ also asked the VE if he could identify existing jobs that fit the given limitations, noting that while the Dictionary of Occupational Titles ("DOT") does not recognize sit/stand options, the VE could rely on his own knowledge and experience whether there are jobs that allow for sit/stand comfort options (Doc. No. 12-3, at 27). The VE then testified to three available jobs: receptionist

(Specific Vocational Preparation ("SVP") level 4, with 20,000 positions in Ohio and 500,000 positions nationally); order clerk (SVP level 4, with 8,000 positions in Ohio and 200,000 positions nationally); and data-entry operator (SVP level 4, with 20,000 positions in Ohio and 500,000 positions nationally) (Doc. No. 12-3, at 28). The VE conceded the DOT does not recognize a sit/stand option, but was basing his testimony on the functional job analysis (Doc. No. 12-3, at 28–29).

Plaintiff contends that because the VE only identified semi-skilled jobs in response to the ALJ's hypothetical question, and because the VE specifically stated that there would be no transferable skills, the ALJ erred in relying on such semi-skilled jobs to determine that Plaintiff could perform other work.

**Skill Level of the Identified Jobs**

Plaintiff claims the three jobs identified by the VE are semi-skilled (although neither the ALJ nor VE identified them as such) because they are assigned a SVP level of 4, which indicates the jobs would take three to six months to learn. Work is unskilled only if it can be learned in thirty days or less. 20 C.F.R. §§ 404.1568(a), 416.968(a). Plaintiff further argues she is incapable of performing semi-skilled jobs because she has no transferrable skills (Doc. No. 18, at 14).

While Plaintiff correctly recognizes that unskilled jobs are typically structured so that a person cannot ordinarily sit/stand at-will (Doc. No. 19, at 5), the VE testified, based on his own professional judgment and experience, that someone like Plaintiff could perform the requirements of a receptionist, order clerk, or data-entry clerk (Doc. No. 12-2, at 18).

An ALJ may rely on the testimony of a VE, even if that testimony is inconsistent with the DOT job descriptions, because the Social Security regulations do not require strict adherence to the DOT classifications. *Conn. v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995).

7

However, "[w]hen a VE or VS [vocational specialist] provides evidence about the requirements of a job occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE and VS evidence and information provided by the DOT;" and if the evidence appears to conflict, then the ALJ must "obtain a reasonable explanation for the apparent conflict." SSR-004P, 2000 WL 1898704, at *4. Should the VE fail to identify any such conflict, the ALJ has no responsibility to identify or resolve a conflict, unless it is otherwise apparent. *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008).

Here, the ALJ acknowledged that the DOT did not recognize a sit/stand option, but also recognized the VE testimony to the contrary (Doc. No. 12-2, at 18). SSR 004-P states "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on DOT information." 2000 WL 1898704, at *2.

The VE need not rely solely on the DOT listing, but may rely on "other reliable publications, information directly obtained from employers, or from a VE's or VS's experience in job placement or career counseling." *Id.* Further, "the DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." *Id.*, at *3. The Sixth Circuit has recognized that a VE has the ability to "tailor" findings to the particular claimant. *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163 (6th Cir. 2009) (citing *Wright*, 321 F.3d at 616).

In terms of skill level, the DOT lists a SVP level for each described occupation. 20 C.F.R. §§ 404.1568 and 416.968. These skill levels are defined as follows: unskilled work corresponds to a SVP of 1–2; semi-skilled work corresponds to a SVP of 3–4; and skilled work corresponds to a SVP of 5–9. Although the regulatory definitions of the skill levels are controlling, "there may be a reason for classifying an occupation's skill level differently than in the DOT." *Id*.

The VE identified three jobs, each with a SVP of 4. (Doc. No. 12-3, at 28). Neither the VE nor the ALJ directly addressed the issue of whether the potential occupations were unskilled or semi-skilled.

Plaintiff argues that semi-skilled work requires more than thirty days to learn and requires transferable skills, and thus she is unable to perform any semi-skilled jobs. However, SSR 82-41 states that while semi-skilled work requires more than thirty days to learn, the content of work activities in some semi-skilled jobs may be little more than unskilled. 1982 WL 31389, at *849–850. "Therefore, close attention must be paid to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do the work." *Id*., at *850.

In *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003), the Sixth Circuit found the ALJ did not err in giving credit to the VE's testimony that certain jobs were available to the unskilled plaintiff just because the DOT described them as semi-skilled. The Commissioner is not bound by the DOT's characterization of the occupations, consistent with prior rulings. *Id*. (citing *Conn. v. Sec. of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)).

Here, there is substantial evidence in the record that Plaintiff can perform the three identified jobs. The VE found Plaintiff able to adjust to other work (Doc. No. 12-3, at 27); Plaintiff has completed some college, and is approximately thirteen credits away from a dual associate degree

(Doc. No. 12-3, at 7–8); of the six occupations Plaintiff previously worked, four were semi-skilled jobs and one was skilled (Doc. No. 12-3, at 25–26), determining Plaintiff possesses the capability to learn skills required to perform in a semi-skilled job, or even a skilled job; Plaintiff's last job worked prior to her claimed onset of disability was in outside sales, a skilled job, which she held from 2003–07 (Doc. No. 12-3, at 26 & 12-8 at 26); the job prior to that, from 2002–03, was an "office helper" described by Plaintiff as "answering phones, taking messages, filing, [and] faxing" (Doc. No. 12-8, at 30); and Plaintiff also worked with customers in most of her jobs (Doc. No. 12-8, at 27–31). While Plaintiff may have no transferable skills from this prior employment, it is not unreasonable to believe, given her education and prior job responsibilities, she could learn to perform the skills required of the jobs suggested by the VE.

Because the Social Security regulations do not require the ALJ or VE to rely on the classifications provided in the DOT, and because the ALJ did not err in relying on the VE's testimony that an individual possessing Plaintiff's characteristics and limitations was capable of performing certain jobs, this Court finds that the ALJ's decision was based on substantial evidence.

**Plaintiff's Limitations**

The ALJ determined that Plaintiff had severe medically determinable impairments based on the objective medical evidence submitted in support of the claim (Doc. No. 12-2, at 13–14). Upon considering the entire record, the ALJ also determined Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the requirement of a sit/stand at-will option for comfort (Doc. No. 12-2, at 13). In making this determination, the ALJ sought to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit claimant's ability to do basic work activities" (Doc. No. 12-2, at 13).

The ALJ found that Plaintiff's impairment could reasonably be expected to cause the alleged symptoms, and yet Plaintiff's claims as to the intensity, persistence and limiting effects of those symptoms were not fully credible, to the extent they were inconsistent with or unsupported by the medical evidence (Doc. No. 12-2, at 15). The ALJ considered the objective medical record, Plaintiff's testimony, and the opinion evidence of Dr. Retholtz, Dr. Blood, and State agency medical consultant Dr. Klyop, as affirmed by Dr. Villanueva, a state agency physician (Doc. No. 12-2, at 16). The ALJ gave great deference to the opinion of Dr. Retholtz, very limited weight to the opinion of Dr. Blood, and little weight to the opinion of Dr. Klyop (Doc. No. 12-2, at 16). Each opinion is addressed below.

### *Dr. Retholtz*

Plaintiff claims she cannot sustain work activity on a regular and continuing basis (Doc. No. 19, at 7), and the R&R overlooks the allegedly more restrictive evaluation of her RFC present in Dr. Retholtz's opinion. Specifically, Plaintiff alleges the ALJ did not acknowledge part of Dr. Retholtz's opinion, despite the fact that the ALJ claimed to give "great weight" to his opinion (Doc. No. 12-2, at 16).

Dr. Retholtz stated, in relevant part (Doc. No. 12-12, at 11):

> [Plaintiff] has a severe functional limitation in regards to the ability to sit, stand, walk, lift or carry for any prolonged period of time. Simple tasks such as going to the grocery store tend to cause severe pain with this patient, leading her to not being able to perform any other duties for the rest of the day. At this point in time I think it is perfectly reasonable, due to the significant injury that this patient suffered, that she be considered for disability.

Plaintiff's argument is without merit both because it misstates Dr. Retholtz's opinion and because it incorrectly states that the ALJ failed to consider the limitations identified by Dr. Retholtz.

Contrary to Plaintiff's interpretation, Dr. Retholtz never stated, or even implied, that Plaintiff could not sustain work activity on a regular and continuing basis. Rather, Dr. Retholtz opined that

11

Plaintiff is severely limited in her ability to sit, stand, walk, lift or carry for any prolonged period of time. In her opinion, the ALJ acknowledged these functional limitations and accounted for them in the RFC assessment by placing Plaintiff at the sedentary level and providing for a sit/stand at-will option for comfort (Doc. No. 12-2, at 16). While tasks such as grocery shopping would cause Plaintiff great pain and leave her unable to perform other tasks during that same day, this does not negate the ALJ finding, as grocery shopping is not comparable to a sedentary job where one can sit or stand at-will for her comfort.

Further, under 20 C.F.R. § 416.945(e), the ALJ must assess the claimant's RFC based on all the evidence. It is true that a treating physician's opinion as to the severity and nature of Plaintiff's conditions should be afforded controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 232 (6th Cir. 2007). This does not mean, however, the ALJ is required to rely solely on that physician's opinion without consideration of other evidence. Here, the ALJ clearly explained the evidence she relied on in making her determination, which included affording great weight to Dr. Retholtz's opinion of Plaintiff's functional limitations (Dr. No. 12-2, at 16). Plaintiff has not identified any part of Dr. Retholtz's opinion which would undermine the ALJ's determination.

Because the ALJ properly considered Retholtz's opinion as a treating source, and because her determination is not inconsistent with that medical opinion, her decision is supported by substantial evidence.

12

### *Dr. Blood*

Plaintiff argues the ALJ improperly discounted the opinion of Dr. Blood, a treating physician, in determining her RFC. The R&R found the ALJ provided good reasons for affording Dr. Blood's opinion very limited weight (Doc. No. 18, at 19); this Court agrees.

While treating physicians may be given controlling weight when consistent with other substantial evidence in the record, the ALJ, in determining how much weight is appropriate, will consider several factors. *Rogers*, 486 F.3d 234 at 242. These factors include the length, frequency, nature, and extent of the treatment relationship, as well as the supportability and consistency of the physician's conclusions. *Id.*; 20 C.F.R. § 404.1527(d). The ALJ must provide good reasons for discounting the treating physician's opinion that are sufficiently specific to make clear the weight given to the opinion, and the reasons that weight was given. *Id.*

Dr. Blood opined that Plaintiff can sit for fifteen minutes at a time and stand for five minutes at a time, but then will need to lie down at unpredictable intervals throughout the day (Doc. No. 12-14 at 30). He also indicated, somewhat inconsistently, that she can occasionally lift one to two pounds but never "less than ten pounds," will require more than ten unscheduled breaks during the day for ten minutes at a time, and will be absent from work more than three times per month (Doc. No. 12-14, at 30). The ALJ found these limitations to be inconsistent with the medical record, and Dr. Blood did not provide any treatment records that would support his opinion (Doc. No. 12-2, at 16). In fact, Dr. Blood did not identify any basis for his opinion.

Specifically, the ALJ found the limitation that Plaintiff must lay down after sitting or standing to be inconsistent with both the medical evidence and Plaintiff's own testimony (Doc. No. 12-2, at 16). Although Plaintiff did testify that she must lay down after sitting to take the pressure off her back

13

(Doc. No. 12-3, at 20), she also testified that she drives one to two times per week, occasionally attends church services, and that she had recently flown by plane to Florida for a family vacation (Doc. No. 12-3, at 17–21). Plaintiff also testified that she had traveled by car to Georgia for Thanksgiving (Doc. No. 12-3, at 17). The ALJ noted that Plaintiff was able to fully participate in the hearing, which required her to sit for forty-five minutes, with no apparent difficulties (Doc. No. 12-2, at 16).

Plaintiff testified that her pain and condition got worse after her October 2006 car accident, and that she was able to "hide" much of the time off work until she was fired for poor sales in April 2007, the alleged onset date of her disability (Doc. No. 12-3, at 12). Plaintiff's medical records indicate that as of February 13, 2007, when Plaintiff called for the results of urinary tract testing, her pain was not debilitating but was adding to her pre-wedding stress (Doc. No. 12-11, at 14). Plaintiff also received emergency room treatment in December 2006, reporting ankle pain after she slipped while "dancing in the shower" the day before (Doc. No. 12-11, at 2).

Plaintiff's testimony regarding her physical limitations was also inconsistent with the limitations suggested by Dr. Blood. Plaintiff stated that she was unable to lift and carry more than five pounds; however, Dr. Blood stated she was unable to lift more than one or two pounds occasionally (Doc. No. 12-3, at 19). She also stated she could sit for short periods, up to thirty minutes maximum, whereas Dr. Blood opined she could sit for only fifteen minutes at a time (Doc. No. 12-3, at 20).

Plaintiff was also assessed by Dr. Robert Kalb, a spinal surgeon, in September 2008 (Doc. No. 12-14, at 26). Dr. Kalb did not provide opinion testimony for this case, but his report was included in the objective medical evidence. At that time, Dr. Kalb reported a functional improvement and pain

14

decrease for Plaintiff with medication (Doc. No. 12-14, at 27). Dr. Kalb further noted that Plaintiff's straight leg raising test was negative, but that her heel-toe gait and lumbar and thoracic spine movement were limited (Doc. No. 12-14, at 27); and that Plaintiff's deep tendon reflexes and sensation were normal, her coordination was good, and that she retains a full range of motion in her hips and knees despite a limp. This evidence does not support the severe limitations suggested by Dr. Blood.

Dr. Blood also opined that Plaintiff suffered from extreme difficulties understanding, remembering and carrying out complex instructions, marked difficulties in her ability to make judgments on simple work-related decisions, and a moderate limitation in her ability to respond appropriately to usual work situations and to changes in routine work setting, all as a result of side effects of her medication (Doc. No. 12-15, at 2–3). The ALJ found that those limitations were unsupported by the medical evidence, and that Dr. Blood did not provide any treatment records to support his opinion (Doc. No. 12-2, at 16). Further, the ALJ found that Plaintiff herself did not allege any such extreme side effects in her testimony, nor does the record reflect she ever complained of such to her physicians (Doc. No. 12-2, at 16).

Plaintiff contends the ALJ improperly considered her testimony regarding her activities because they are indicative of what she is able to do on an isolated or occasional basis, not on a sustained basis, as a RFC should measure (Doc. No. 19, at 6–7). However, 20 C.F.R. § 416.945(e) requires the ALJ to assess Plaintiff's RFC based on all the evidence. The ALJ clearly indicated she considered the objective medical evidence as well as the opinions of all the doctors, along with Plaintiff's testimony.

The ALJ ultimately found that Dr. Blood's opinion should be given weight only to the extent it was consistent with and supported by the objective medical evidence, Dr. Retholtz's opinion and the RFC assessment. She found that the severity of the limitations suggested by Dr. Blood were unsupported by the record evidence and not reflected in any treatment records from Dr. Blood himself. The ALJ also found inconsistencies between Dr. Blood's opinion and Plaintiff's own testimony. The ALJ also considered the medical report of Dr. Klyop, but expressed doubts that his conclusions regarding Plaintiff's limitations were supported by the objective medical evidence, and instead chose to give more weight to Dr. Retholtz's and Dr. Blood's opinions (Doc. No. 12-2, at 16–17).

While the ALJ did not explicitly state her consideration of the length, nature and extent of the treatment relationship between Dr. Blood and Plaintiff, or the frequency of the examinations, the record clearly supports the ALJ giving Dr. Blood's opinion less weight based on these factors. At the time of her testimony, Plaintiff had a treatment relationship with Dr. Blood for only three months (Doc. No. 12-3, at 12). Comparatively, Plaintiff had been treated by Dr. Retholtz from late 2006 until early 2009 (Doc. No. 12-3, at 13). The record does not specify how many times Plaintiff had been seen by Dr. Blood, but Plaintiff did testify that she visited her doctor about every three months (Doc. No. 12-3, at 13). The Magistrate thus concluded that because Plaintiff has only been treated by Dr. Blood for a few months, she had most likely seen him once (Doc. No. 18, at 17). Even if Plaintiff saw Dr. Blood more than once, it is unlikely that she had seen him much more frequently in such a short period. Based on the very limited duration and frequency of Dr. Blood's treatment of Plaintiff, there is substantial evidence to support the ALJ's determination to give Dr. Blood's opinion very limited weight.

**CONCLUSION**

For the foregoing reasons, this Court determines that the ALJ based her decision on substantial evidence. This Court adopts the Magistrate's R&R (Dr. No. 19) to affirm the Commissioner's decision.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

                                                  April 14, 2011